IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KARL WALTER SUHSEN,

                Plaintiff,

v.                                                                                           OPINION and ORDER

ANDREW SAUL,                                                                  20-cv-519-jdp
Commissioner of Social Security,

                Defendant.

---

Plaintiff Karl Walter Suhsen seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding him not disabled under the Social Security Act. Suhsen contends that administrative law judge (ALJ) Susan G. Giuffre erred in three ways: (1) discounting two opinions regarding Suhsen's physical abilities; (2) discounting Suhsen's subjective complaints, particularly regarding his migraines; and (3) failing to address whether Suhsen was medically disqualified from performing his previous job because of his prescribed pain medication. The court agrees that remand is required, primarily to reassess the effects of Suhsen's migraines.

ANALYSIS

Suhsen worked as an air traffic controller for 31 years, first in the military and then as a civilian. Suhsen applied for benefits in 2017, alleging that he was disabled as of May 2, 2016, when he was injured in a motor-vehicle accident, after which he suffered back and neck pain and migraines. Suhsen's application was denied initially and upon reconsideration. He requested a hearing, which the ALJ held on April 3, 2019. The ALJ found that Suhsen suffered

from the severe impairments of disorder of the spine and migraines. R. 20.[1] The ALJ ascribed to Suhsen the residual functional capacity (RFC) to perform light work, with some environmental restrictions to address his migraines, and some climbing and bending restrictions to address his back and neck pain. R. 23. Relying on the testimony of a vocational expert, the ALJ concluded that Suhsen could perform his past relevant work as an air traffic controller and was thus not disabled. R. 28. The Appeals Council declined review. R. 1–4. Suhsen now appeals to this court.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This standard is not high, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ must "build an accurate and logical bridge" between the evidence and her conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal quotation marks omitted).

### A.  Opinion evidence

Suhsen contends that the ALJ improperly discounted the opinions of two sources: Loren Stockton, his treating chiropractor, and Justin King, a vocational testing examiner.

#### 1.  Loren Stockton

Stockton completed a form regarding Suhsen's condition in February 2017 in which he stated that Suhsen suffered from "severe concussion symptoms, severe migraine and neck spasms, severe low back pain and spasms" as a result of his motor-vehicle accident. R. 447.

---

[1] Record cites are to the administrative transcript, located at Dkt. 16 and Dkt. 16-1.

Stockton checked boxes on the form stating that he believed that these conditions caused Suhsen to suffer a "service deficiency," which the form defined "as being 'less than fully successful' with regards to performance, attendance, or conduct at [Suhsen's] current employment." R. 447–48. Stockton also checked a box stating that he expected Suhsen's medical conditions to continue for at least a year.

The ALJ gave only "partial" weight to Stockton's opinion. R. 26. She acknowledged that Stockton was a treating source who had examined Suhsen "many times in the relevant period." *Id.* But she gave three reasons for discounting the opinion: (1) it addressed Suhsen's ability to return to his previous job, not "his general ability to perform basic work activities"; (2) it was inconsistent with evidence "that [Suhsen] has no substantial cognitive dysfunction" and that Suhsen showed "only modest signs of dysfunction during physical examinations"; and (3) it "arguably intrude[d]" on an issue reserved to the agency: whether Suhsen could perform his past relevant work.[2] R. 26–27.

Each of these reasons is unsound. The ALJ's ultimate decision turned on whether Suhsen could perform his previous job as an air-traffic controller, so Stockton's opinion that Suhsen could not do this job is clearly relevant. Although the agency has the final say on whether a claimant is disabled, a source's opinion on the matter shouldn't be ignored. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

---

[2] The commissioner also notes that Stockton, a chiropractor, was not an acceptable medical source under the applicable regulations. Dkt. 24, at 11 n.2. But the ALJ didn't raise this reason for discounting the opinion, so the court will not consider it. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("[A]n agency's lawyers [cannot] defend the agency's decision on grounds that the agency itself had not embraced.").

The ALJ's second reason for discounting Stockton's opinion—that it was inconsistent with other evidence—is also problematic. Inconsistency with the medical record was a relevant factor for the ALJ to consider under the regulations in effect at the time. *See* SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006) (ALJ evaluating opinion from nonmedical source should consider "[h]ow consistent the opinion is with other evidence"). But neither Stockton nor Suhsen himself contended that Suhsen suffered significant cognitive impairment, so that observation is a non sequitur: Suhsen's problem was pain. The ALJ said that the record showed only modest reductions of spine function, R. 25, but that conclusion is hard to square with the evidence. The ALJ cited parts of the record showing objective corroboration of back and neck problems. And, as the ALJ also noted, when conservative treatment for back and neck pain was unsuccessful, Suhsen turned to more invasive treatment, including radiofrequency ablation and cervical radiofrequency neurotomy. *Id*. The ALJ said that the cervical radiofrequency neurotomy produced "significant neck pain relief," but even the cited record, R.510, said that the procedure had done nothing for his migraines and that he continued with pain related to his lower back. On remand, the ALJ must reassess Stockton's opinion.

**2. Justin King**

King is a psychologist, rehabilitation counselor, and vocational evaluator. He performed a battery of physical and mental tests on Suhsen over three days in September 2017. R. 852–77. King opined that Suhsen was "temporarily totally disabled from any and all occupations that exist within the United States economy on a sustained and gainful basis" based on his "age, education, work experience, measured aptitudes, interests and abilities, taking into consideration the objective medical record and his residual physical and neurocognitive functioning," R. 870. He said that Suhsen "gave an excellent effort" during the

4

evaluation but "experienced a significant degree of pain and discomfort," with his tolerance for sedentary work "appear[ing] to diminish" over each day and over the course of the three-day evaluation. R. 871–72. He said that Suhsen required unscheduled breaks that would not be tolerated in the competitive labor market. R. 872.

The ALJ gave King's opinion little weight for three reasons: (1) King's opinion that Suhsen was temporarily totally disabled was "restricted to a limited portion of time"; (2) King considered "a myriad of things" that weren't directly related to Suhsen's physical abilities, including psychometrics, education, and work experience; and (3) the opinion was inconsistent with imaging of Suhsen's spine, nerve conduction testing of Suhsen's left leg, "and trends in [Suhsen's] physical examinations demonstrating only modest functional restriction." R. 27. Suhsen contends that all three of these reasons are unsound.

The court agrees that King's opinion reflects King's assessment at the time and does not necessarily reflect a permanent disability. But King's assessment reflects Suhsen's status during the period of alleged disability, so it is relevant evidence that cannot be simply dismissed. King conducted a comprehensive evaluation of Suhsen's employability, and thus he considered many factors other than Suhsen's physical capacity. But that is no reason to disregard King's thorough assessment of Suhsen's physical abilities. The ALJ's third reason—consistency with medical evidence—suffers from the same problem as the ALJ's assessment of Stockton's opinion. There is evidence that corroborates Suhsen's reports of pain, and the ALJ hasn't adequately explained why she discounted that evidence of unrelieved back pain and migraines. On remand, the ALJ must reassess King's opinion.

## B. Subjective complaints

Suhsen contends that the ALJ erred by partially discounting his subjective complaints, which concerned lower back pain, neck pain, neuropathy in his extremities, and migraines, R. 23. He said that his pain prevented him from sitting or standing "long enough to maintain employment" and that medication side effects reduced his ability to function. *Id.* He testified at his hearing that attempts at pain relief had been unsuccessful and that his headaches were particularly resistant to treatment. *Id.* He testified that he suffered headaches on a daily basis, with some lasting as long as six to eight hours. R. 42. He also testified that he treats his headaches with "a lot of ice, heating packs, hot showers, [and] sleep," during which he has to "cover [his] eyes and close [him]self in a room." *Id.* And he said that his headaches are debilitating three to five times per week and that he spends most of his days "laying on a couch or in the bedroom . . . with the doors closed and the blinds pulled." R. 42–43.

The ALJ gave three general reasons for her conclusion that Suhsen's subjective complaints weren't entirely supported by the evidence: (1) his complaints were unsupported by objective medical evidence; (2) his complaints were inconsistent with his daily activities; and (3) his attempts to treat his pain were partially successful. The ALJ also gave two additional specific reasons for her conclusion that Suhsen's migraines were not as severe as he said: (4) Suhsen's brain imaging was unremarkable; and (5) Suhsen's neurological examinations yielded no abnormal results.

### 1. Objective medical evidence

Agency regulations state that objective medical evidence "is a useful indicator" for the agency to assess the intensity and persistence of a claimant's subjective reports of pain. 20 C.F.R. § 404.1529(c)(2). As with Stockton's and King's opinions, the ALJ concluded that

6

Suhsen's subjective reports regarding his lower back pain, neck pain, and neuropathy weren't supported by the objective medical evidence. Suhsen says that the same evidence he identified regarding King's opinion shows that the ALJ erred in comparing his subjective complaints to his objective records. But even if the ALJ didn't err on this point, agency regulations provide that an ALJ cannot reject a claimant's subjective complaints solely because they are unsupported by objective medical evidence. *Id.* A lack of objective support in the medical records, standing alone, would be an insufficient reason for the ALJ's decision to discount Suhsen's subjective complaints. *Israel v. Colvin*, 840 F.3d 432, 440–41 (7th Cir. 2016).

2. **Activities of daily living**

The ALJ said that Suhsen's activities of daily living were "generally inconsistent with high levels of pain and disability," R. 26. The ALJ described Suhsen's daily activities as "robust," R. 26, but this mischaracterizes Suhsen's reports. The ALJ noted that Suhsen cared for a son with special needs. But the court of appeals has "urged caution in equating [daily] activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) (collecting cases). And what Suhsen actually said in his function report is that he takes care of his son "[the] best [he] can" by making breakfast and driving him to school. R. 278. The ALJ said that Suhsen "performed household chores such as doing the laundry and washing the dishes." R. 26. But Suhsen testified that his neighbors and family "help for the most part" with his housework, that he "attempt[s] to do dishes . . . when [he] can," and that trying to perform household chores "almost always initiates some type of headache." R. 42. The ALJ noted that Suhsen was able to drive a car, but she failed to note his testimony that he

7

drives only when necessary because headaches and other pains often prevent him from driving, R. 43.

In defense of the ALJ's consideration of Suhsen's daily activities, the commissioner says only that the ALJ didn't equate Suhsen's activities with the ability to perform full-time work, but rather "rightly considered that [Suhsen]'s ability to engage in them undermined his allegations of disabling symptoms and limitations." Dkt. 24, at 9. But the ALJ didn't explain how any of the cited activities suggested that Suhsen was overstating his symptoms, and neither does the commissioner. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (noting that in performing her daily activities, "a person has more flexibility in scheduling [daily activities] than [job activities], can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer"). Suhsen's modest daily activities, which he said he performed only with difficulty, weren't a good reason for discounting his subjective complaints.

### 3. Treatment measures

The ALJ recognized that Suhsen had attempted numerous methods to treat his pain. R. 25. She noted that he had attempted to treat his neck and back pain with multiple medications, epidural steroid injections, chiropractic manipulation, physical therapy, radiofrequency ablation, and radiofrequency neurotomy. R. 25. Of these measures, she noted only that the radiofrequency neurotomy provided "significant" relief for Suhsen's neck pain. *Id.* But even this modest statement exaggerates the efficacy of Suhsen's treatment; the record cited by the ALJ doesn't say that the treatment provided "significant" relief, only that it provided "relief." *See* R. 508. The ALJ also noted that Suhsen had attempted to treat his migraines with multiple medications, trigger point injections, and occipital nerve blocks. R. 25.

8

She noted that the injections and nerve blocks "provided some measure of pain relief after multiple administrations." R. 25; *see also* R. 809 ("Trigger point [injections] and occipital nerve block did not help him with the first trial, but the second trial seems to have helped him to some extent."). She also noted that Suhsen reported "some relief from Imitrex," although he could not take that medication frequently due to his job.[3] R. 25.

The ALJ's summary of Suhsen's pain treatment shows that he tried a wide range of treatment measures, ranging from the conservative to the aggressive. The ALJ acknowledged that except for radiofrequency neurotomy, Suhsen's attempts to treat his neck and back pain were unsuccessful. And she acknowledged that Suhsen received only partial relief from his migraine treatments. The records that the ALJ cited don't support the conclusion that these treatments effectively alleviated Suhsen's subjective complaints, particularly his migraines. *See* R. 508 (despite efficacy of radiofrequency neurotomy, Suhsen "continues to have severe migraine activity" with "greater than 15 migraine days a month" and headaches lasting "for greater than 4–6 hours each"); R. 765 (Suhsen's "migraines have been intractable to multiple oral preventative medications"); R. 809 (although second trial of trigger point injections and occipital nerve blocks "have helped to some extent," Suhsen "continues to have neck pain everyday" and sometimes "suffers with a headache for about three to four days at a stretch"). These treatment attempts weren't a good reason for discounting Suhsen's subjective complaints.

---

[3] The ALJ's statement that Suhsen was unable to take Imitrex frequently because of his job differs from the medical record that the ALJ cites, which says that Suhsen "does get frequent headaches and therefore he cannot take Imitrex frequently," R. 765. Although the parties don't address this inconsistency, both sides agree that Suhsen was unable to take Imitrex frequently.

### 4. Brain imaging

The ALJ noted that CT imaging and MRIs of Suhsen's brain were "unremarkable" and "largely normal." R. 24. But the court of appeals has observed that "[d]octors use MRIs *to rule out other possible causes of headache*—such as a tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (emphasis in original). Suhsen makes this point in his brief, to which the commissioner responds only by saying that it was proper for the ALJ to consider the imaging because it "was ordered specifically because of complaints of severe headaches," Dkt. 24, at 18. But this is unresponsive to Suhsen's point, which is that the imaging merely ruled out some potential causes of his headaches. As in *Moon*, the ALJ failed to cite any medical opinion "suggest[ing] that the MRI evidence meant anything about [Suhsen]'s migraines," so the ALJ's reliance on that imaging was improper. *Moon*, 763 F.3d at 722.

### 5. Neurological examination results

The ALJ said that Suhsen's neurological examinations "revealed normal motor function, strength, reflexes, gait, and coordination . . . and no sensory loss to temperature or vibration." R. 25. But she failed to explain what any of these results had to do with his migraines. The commissioner responds to Suhsen's challenge on this point only by saying, "It is not unreasonable to conclude that a person with migraines that are 'debilitating' three to five days per week . . . would very likely exhibit poorer motor function on examination," and by noting that migraines are evaluated under the category of neurological disorders under agency regulations. Dkt. 24, at 18. But the commissioner cites no authority to support the ALJ's reliance on these results, nor did the ALJ cite any medical opinion to support her conclusion that the results of Suhsen's neurological examinations called his subjective complaints of

10

migraines into question. As with her lay interpretation of Suhsen's imaging results, the ALJ again failed to "rely on expert opinions instead of determining the significance of particular medical findings [herself]." *Moon*, 763 F.3d at 722.

In sum, the only arguably valid reason that the ALJ gave for discounting Suhsen's subjective complaints was that they were unsupported by objective evidence. That reason isn't enough on its own. *Israel*, 840 F.3d at 440–41. The ALJ didn't entirely discount Suhsen's complaints; she said that she "assumed high levels of pain" in crafting Suhsen's RFC, although she didn't specifically say which restrictions in the RFC were intended to accommodate Suhsen's pain and migraines. *Id.* But nothing in the RFC could adequately account for migraines of the frequency and intensity that Suhsen reported. Indeed, a vocational expert testified during the hearing that a person who must be off-task for more than 20% of a workday would be precluded from working in any job. R. 53. The ALJ's treatment of Suhsen's subjective complaints wasn't supported by substantial evidence; remand is required.

## C. Medical disqualification

Suhsen contends that the ALJ erred by concluding that he could perform his previous job as an air-traffic controller because Federal Aviation Administration rules disqualified him from working due to the pain medications he was taking. *See* R. 260, R. 277.

But Suhsen has waived the issue, at least for purposes of this appeal. Suhsen relies on *McClesky v. Astrue*, in which the court of appeals held that an ALJ erred by failing to fill a "gaping hole in the record" about whether the claimant could have qualified for a license that she said was necessary to perform a particular job. 606 F.3d 351, 353–55 (7th Cir. 2010). But the claimant in *McClesky* specifically alerted the agency to the issue by sending a letter to the ALJ shortly after the hearing. *See id.* at 353. Suhsen didn't raise the issue of disqualification

11

during or after his hearing, only in his prehearing reports to the agency. Because he didn't present this issue to the ALJ, he has waived the argument in this court. *Brewer v. Chater*, 103 F.3d 1384, 1393 (7th Cir. 1997), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999).

On remand, however, the ALJ should address whether the medication that Suhsen must take for migraines would disqualify him from his past work as an air traffic controller.

**D. Remedy**

Suhsen asks the court to remand his case to the agency with instructions to award benefits. This remedy is appropriate only in "unusual cases" in which "the relevant factual issues have been resolved and the record requires a finding of disability." *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). He says that such a remedy is appropriate here because only one conclusion can be drawn from his record—that he is precluded from full-time employment "due to his migraine-related limitations, including a need for unscheduled breaks and to lie down to rest during the day." R. 20, at 16. In support of this argument, he cites the vocational expert's hearing testimony that a person who was off-task for more than 20% of a workday would be precluded from all work. *See* R. 53.

Suhsen has shown that the ALJ's decision to discount his subjective complaints wasn't supported by substantial evidence. But he hasn't shown that all factual disputes have been resolved and the ALJ was *required* to give full credit to his subjective complaints. On an appeal of a Social Security decision, federal courts should not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Because Suhsen's appeal rests primarily on the credibility of his subjective complaints, remand for reconsideration of those

complaints is the appropriate remedy. *Johnstone v. Astrue*, 843 F. Supp. 2d 962, 980 (E.D. Wis. 2012). This court and other district courts in this circuit have reached the same conclusion regarding subjective complaints of migraines in similar circumstances. *See, e.g.*, *Patricia K. v. Saul*, 3:19-CV-719-JVB, 2020 WL 8816185, at *3 (N.D. Ind. July 30, 2020); *Krevs v. Saul*, No. 18-CV-1742, 2020 WL 58068, at *5 (E.D. Wis. Jan. 6, 2020); *Stebbins v. Barnhart*, No. 03-C-0117-C, 2003 WL 23200371, at *5 (W.D. Wis. Oct. 21, 2003).

ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of the Social Security Administration, denying plaintiff Karl Walter Suhsen's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered May 13, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge